United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
John Richards Homes Building Co., L.L.C.,                    Case No. 02-54689-R
                          Debtor.                            Chapter 7
_____/

**Opinion and Order Regarding:**

**Application of Honigman Miller Schwartz and Cohn**
**for Second Award of Attorney Fees and Expenses, and Supplement**

**and**

**JRH's Motion for Assessment of Additional**
**Punitive Damages Based on Post-Award Conduct**


**I. Introduction**

**A. The Fee Application and Supplement**

Upon remand from the district court, this matter is again before the Court on the

"Application of Honigman Miller Schwartz and Cohn for Second Award of Attorney Fees and

Expenses." The Honigman firm represented the alleged debtor, John Richards Homes Bldg. Co.,

L.L.C., ("JRH") throughout this failed involuntary bankruptcy proceeding that the petitioning

creditor, Kevin Adell, filed. The dismissal of the petition ultimately resulted in a judgment under

11 U.S.C. § 303(i) against Adell and in favor of JRH in the amount of $6.4 million. *See In re John*

*Richards Homes Bldg. Co., L.L.C.*, 291 B.R. 727 (Bankr. E.D. Mich. 2003). The Honigman firm

also represented JRH in Adell's several appeals from the judgment, as well as in attempting to

collect on the judgment and in Adell's own failed bankruptcy in Florida.

The fee application seeks an award against Adell for fees of $1,500,919.75 and expenses of

$212,054.29. Initially, the Court denied the application on the grounds that 11 U.S.C. § 303(i)(1) does not allow an award of attorney fees for services provided after the judgment awarding damages under § 303(i), such as the application sought. *See In re John Richards Homes Bldg. Co. L.L.C.*, 2006 WL 3228523 (Bankr. E.D. Mich. 2006).

The district court vacated that order and remanded the matter. *See Honigman Miller Schwartz & Cohn. L.L.P. v. Adell* (*In re John Richards Homes Bldg. Co., L.L.C.*), 405 B.R. 192 (E.D. Mich. 2009).

Following the remand, the Honigman firm filed a supplement to the application seeking additional fees of $279,465.21, plus $39,273.91 in expenses.

Accordingly, the total now sought is $2,031,713.16.

For the reasons stated herein the applicant is allowed attorney fees and costs in the reduced amount of $1,854,192.73.

**B. The Motion for Additional Punitive Damages**

Also before the Court on remand is JRH's "Motion for Assessment of Additional Punitive Damages Based on Post-Award Conduct." This Court had denied this motion on the grounds that the § 303(i) judgment was not a court order and that therefore Adell's actions in avoiding the judgment were not sanctionable as violations of a court order. *In re John Richards Homes Bldg. Co., L.L.C.*, 2006 WL 3230009 (Bankr. E.D. Mich. 2006).

The district court also vacated that order and remanded the matter. *John Richards Homes Bldg. Co., L.L.C. v. Adell* (*In re John Richards Homes Bldg. Co., L.L.C.*), 404 B.R. 220 (E.D. Mich. 2009).

Upon remand, the Court conducted an evidentiary hearing. For the reasons stated herein,

the Court now concludes that the motion should be granted and that a sanction of $2,800,000.00 should be awarded against Adell in favor of JRH.

## II. The Procedural History of the Case

The procedural history of this case is overwhelming. Fortunately, it is unnecessary to review it in detail here. That history is well reviewed in the following *thirty-one* published and unpublished decisions from the bankruptcy courts, district courts and courts of appeals serving Michigan and Florida, as well as the United States Supreme Court:

1. *In re John Richards Homes Bldg. Co., L.L.C.*, 291 B.R. 727 (Bankr. E.D. Mich. April 25, 2003) (awarding JRH $4.1 million in compensatory damages, $2 million in punitive damages, and over $300,000 in attorney fees under 11 U.S.C. § 303(i), following the dismissal of Adell's involuntary petition against it).

2. *In re John Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591 (Bankr. E.D. Mich. September 17, 2003) (disallowing Adell's claim of exemption in his recently purchased homestead in Florida on the grounds that the exemption under Florida law was preempted by § 303(i) and that Adell was not a resident of Florida; also finding that Adell Broadcasting and STN.com participated in a scheme to evade the judgment and that the scheme included filing false garnishee disclosures).

3. *In re Adell*, 2004 WL 1243396 (Bankr. M.D. Fla. March 9, 2004) (denying as moot Adell's motion to strike JRH's objection to his motion for abstention and remand of Whall Group adversary proceeding).

4. *In re Adell*, 310 B.R. 460 (Bankr. M.D. Fla. May 28, 2004) (denying JRH's motion to dismiss Adell's chapter 11 case, but holding that the case would be dismissed if Adell's third

3

amended plan were not confirmed).

5. *Adell v. John Richards Homes Bldg. Co., L.L.C.* (*In re John Richards Homes Bldg. Co., L.L.C.*), 312 B.R. 849 (E.D. Mich. August 5, 2004) (affirming the order of April 25, 2003, awarding JRH compensatory damages, punitive damages and attorney fees against Adell).

6. *John Richards Homes Bldg. Co., L.L.C. v. STN.com* (*In re John Richards Homes Bldg. Co., L.L.C.*) 320 B.R. 138 (E.D. Mich. August 5, 2004) (denying the motion of garnishee defendants Adell Broadcasting Co. and STN.com to withdraw the reference on JRH's claims against them).

7. *In re Adell*, 2004 WL 2931393 (Bankr. M.D. Fla. October 1, 2004) (allowing JRH's claim in the amount of $2,800,000 as secured and $3,660,466.68 as unsecured).

8. *In re Adell*, 2004 WL 2931390 (Bankr. M.D. Fla. October 15, 2004) (denying JRH's motion for relief from the stay to permit it to pursue claims against garnishee defendants STN.com and Adell Broadcasting Corp.).

9. *Adell v. John Richards Homes Bldg. Co., L.L.C.* (*In re John Richards Homes Bldg. Co., L.L.C.*), 320 B.R. 139 (E.D. Mich. January 31, 2005) (denying Adell's motion for stay of the damages judgment pending appeal to the court of appeals).

10. *In re Adell*, 321 B.R. 562 (Bankr. M.D. Fla. January 31, 2005) (allowing Adell's homestead exemption in his Florida home).

11. *In re Adell*, 321 B.R. 573 (Bankr. M.D. Fla. February 1, 2005) (avoiding JRH's lien on Adell's home because it impaired his homestead exemption under Florida law).

12. *In re Adell*, 325 B.R. 883 (Bankr. M.D. Fla. March 22, 2005) (granting Adell's motion for reconsideration of the order of May 28, 2004, and allowing a further opportunity to file another amended plan).

4

13. *In re Adell*, 328 B.R. 845 (Bankr. M.D. Fla. June 21, 2005) (following the district court's reversal of the order denying JRH's motion to dismiss Adell's chapter 11 case, granting Adell's motion for sanctions against JRH for violation of the automatic stay).

14. *In re Adell*, 328 B.R. 850 (Bankr. M.D. Fla. July 11, 2005) (denying JRH's renewed motion for relief from the stay to permit it to pursue claims against garnishee defendants STN.com and Adell Broadcasting Corp.).

15. *In re Adell*, 332 B.R. 844 (Bankr. M.D. Fla. October 4, 2005) (granting JRH's motion to dismiss Adell's chapter 7 case).

16. *In re Adell*, 343 B.R. 717 (Bankr. M.D. Fla. February 14, 2006) (denying Adell's motion to reconsider the order dismissing his chapter 7 case).

17. *Adell v. John Richards Homes Bldg. Co., L.L.C.* (*In re John Richards Homes Bldg. Co., L.L.C.*), 439 F.3d 248 (6th Cir. March 1, 2006) (affirming the district court's August 5, 2004 order affirming the award of compensatory damages, punitive damages and attorney fees).

18. *In re John Richards Homes Bldg. Co., LLC*, 346 B.R. 762 (Bankr. E.D. Mich. August 8, 2006) (denying JRH's motions for judgment against garnishee defendants STN.com and Adell Broadcasting Corp. because Adell had paid JRH's judgment against him in full).

19. *In re John Richards Homes Bldg. Co., L.L.C.*, 2006 WL 3230009 (Bankr. E.D. Mich. September 21, 2006) (denying JRH's motion for additional punitive damages).

20. *In re John Richards Homes Bldg. Co., L.L.C.*, 2006 WL 3228523 (Bankr. E.D. Mich. September 21, 2006) (denying Honigman Miller Schwartz & Cohn's second application for fees and expenses).

21. *Adell v. John Richards Homes Bldg. Co., L.L.C.*, 549 U.S. 818, 127 S. Ct. 85 (October

5

2, 2006) (denying Adell's petition for cert. from the Sixth Circuit's affirmance of March 1, 2006).

22. *John Richards Homes Bldg. Co., L.L.C. v. Adell* (*In re Adell*), 2006 WL 3827438 (M.D. Fla. December 27, 2006) (remanding JRH's motion for sanctions against Adell).

23. *John Richards Homes Bldg. Co., L.L.C. v. Adell* (*In re Adell*), 2008 WL 746833 (M.D. Fla. March 18, 2008) (affirming the denial of JRH's motion for sanctions against Adell).

24. *John Richards Homes Bldg. Co., L.L.C. v. Adell* (*In re Adell*), 296 Fed. App'x 837 (11th Cir. October 17, 2008) (affirming the district court's March 18, 2008 order affirming the denial of JRH's motion for sanctions against Adell).

25. *John Richards Homes Bldg. Co., L.L.C. v. Adell Broadcasting Corp.* (*In re John Richards Homes Bldg. Co., L.L.C.*), 2008 WL 7330859 (E.D. Mich. October 20, 2008) (Magistrate's recommendation to affirm the order of August 8, 2006, denying JRH's motion for judgment against garnishee defendants STN.com and Adell Broadcasting Corp.).

26. *John Richards Homes Bldg. Co., L.L.C. v. Adell* (*In re John Richards Homes Bldg. Co., L.L.C.*), 2008 WL 5773653 (E.D. Mich. November 19, 2008) (Magistrate's recommendation to affirm the order of September 21, 2006, denying JRH's motion for additional punitive damages).

27. *John Richards Homes Bldg. Co., L.L.C. v. Adell Broadcasting Corp.* (*In re John Richards Homes Bldg. Co., L.L.C.*), 402 B.R. 780 (E.D. Mich. March 23, 2009) (affirming the order of August 8, 2006, denying JRH's motion for judgment against garnishee defendants STN.com and Adell Broadcasting Corp.).

28. *John Richards Homes Bldg. Co., L.L.C. v. Adell* (*In re John Richards Homes Bldg. Co., L.L.C.*), 404 B.R. 220 (E.D. Mich. March 30, 2009) (reversing and remanding the order of September 21, 2006 denying JRH's motion for additional punitive damages).

29.  *Honigman Miller Schwartz & Cohn, L.L.P.  v. Adell* (*In re John Richards Homes Bldg. Co., L.L.C.*), 405 B.R. 192 (E.D. Mich. March 30, 2009) (reversing and remanding the order of September 21, 2006, denying Honigman Miller Schwartz & Cohn's second application for fees and expenses).

30.  *John Richards Homes Bldg. Co., L.L.C. v. Adell Broadcasting Corp.* (*In re John Richards Homes Bldg. Co., L.L.C.*), 2009 WL 5166199 (E.D. Mich. December 17, 2009) (denying all parties' motions for sanctions).

31.  *In re John Richards Homes Bldg. Co., L.L.C.*, 2010 WL 3909919 (Bankr. E.D. Mich. July 21, 2010) (granting JRH's motion to strike the expert report of Prof. Pottow and to preclude his testimony at trial).

### III. The Present Fee Application and Supplement

The Honigman firm's initial fee application sought fees for its services in successfully defending the involuntary petition and in obtaining a judgment against Adell of $4.1 million in compensatory damages and $2 million in punitive damages.  The Court granted fees and costs of $313,230.68.  *In re John Richards Homes Bldg. Co., L.L.C.*, 291 B.R. 727, 740 (Bankr. E.D. Mich. 2003).

The present application and supplement requests fees for JRH from January 15, 2003 through February 28, 2006.  The supplement seeks fees for services from March 1, 2006 through September 24, 2009.  Together the application and the supplement cover nearly seven years and reflect three overlapping phases of legal services:

(1) The successful defense of the § 303(i) judgment on appeal to the district court, the court

of appeals and the Supreme Court.

(2) The attempts to collect on the judgment.

(3) The successful representation of JRH in Adell's subsequent bankruptcy case in Florida, which was commenced as a chapter 11, was later converted to chapter 7, and was ultimately dismissed.

As detailed in Part VI, the application requests fees and expenses for several attorneys and professionals that the Honigman firm deemed necessary to assist it in its representation of JRH in the latter two of these phases.

## A. The District Court's Reversal of the Denial of the Fee Application

On appeal, the district court concluded that § 303(i)(1) does allow the bankruptcy court the discretion to grant the additional attorney fees that Honigman's second application sought and remanded the matter to this Court to determine the merits of the fee application. *See Honigman Miller Schwartz & Cohn, L.L.P. v. Adell* (*In re John Richards Homes Bldg. Co., L.L.C.*), 405 B.R. 192 (E.D. Mich. 2009).

In its key holding, the district court stated, "§ 303(i) should be interpreted to permit a bankruptcy court to consider attorney fees and costs incurred following the dismissal of an involuntary petition." *Id.* at 199-200. In adopting the magistrate judge's report and recommendation, the district court stated, "The magistrate judge also found that this interpretation comported with the apparent legislative intent of the statute and with the public policies that the statute was meant to advance." *Id.* at 199.

The magistrate judge's report and recommendation, which is attached to the district court's opinion, further explained the basis for this conclusion. Initially the magistrate judge noted the

8

ambiguity in § 303(i):

> [T]he language of § 303(i)(1) is ambiguous as to whether a
> bankruptcy court can only award attorney's fees and costs incurred
> in defending against the filing of an involuntary petition or whether
> it may also award attorney's fees and costs in connection to
> proceedings that arose out of the filing of the involuntary petition
> subsequent to the dismissal of that petition."

*Id.* at 212.

The magistrate judge then thoroughly reviewed the case law on the issue and concluded that

a majority of the cases had ruled that attorney fees incurred post-dismissal are compensable under

§ 303(i)(1). Importantly, the magistrate judge concluded:

> As found by [the majority of] cases, nothing in the Bankruptcy Code
> limits an award to the date of the dismissal of the involuntary petition
> and, if the petitioner appeals the dismissal or the involuntary petition
> causes other litigation, the alleged debtor continues to suffer damages
> for which there should be compensation. *In re Advance Press,* 46
> B.R. at 703, *In re Petrosciences*, 96 B.R. at 665; *In re Atlas Mach.*,
> 190 B.R. at 803-804; *In re Glannon*, 245 B.R. at 894. Moreover, it
> is possible that the majority of attorney's fees were actually incurred
> after an involuntary petition is dismissed and denying those fees
> would "fly in the face of legislative intent and common sense." *In re
> Glannon*, 245 B.R. at 895; *In re Landmark*, 195 B.R. at 846.

*Id.* at 215.

The magistrate judge then went on to explain why the power of the appellate court to award

attorney fees under Fed. R. App. P. 38 is not inconsistent with the authority of the bankruptcy court

to award fees upon a dismissal of an involuntary bankruptcy case under § 303(i)(1):

> Fed. R. App. P. 38 states, "If a court of appeals determines that an
> appeal is frivolous, it may . . . award just damages and single or
> double costs to the appellee." Section 303(i)(1), however, authorizes
> a bankruptcy court to award attorney's fees and costs if an
> involuntary petition is dismissed, regardless of whether the petition
> was filed in bad faith, was without substantial justification, or was
> frivolous. Although the petitioner's motives may be taken into

9

account, see *In re Reid*, 854 F.2d 156, 160 (7th Cir.1988); *In re Atlas Mach.*, 190 B.R. at 803, the "plain language of the statute presents only two prerequisites for an award of fees, costs, or damages under § 303(i)(1):(1) the court must have dismissed the petition on some ground other than consent by the parties; and (2) the debtor must not have waived its right to recovery under the statute." *Higgins*, 379 F.3d at 705-706.

*Id.* at 216.

Finally, the magistrate judge concluded:

[E]ven a good-faith filing of such an involuntary bankruptcy petition creates onerous circumstances for a debtor. *In re Advance Press*, 46 B.R. at 702. One bankruptcy court has noted that an involuntary petition "usually chills the alleged debtor's credit and his sources of supply. It can scare away his customers. It leaves a permanent scar, even if promptly dismissed. It is also obvious that the use of the bankruptcy court as a routine collection device would quickly paralyze this court." *In re SBA Factors of Miami, Inc.*, 13 B.R. 99, 101 (Bankr. S.D. Fla. 1981). While § 303(i)(2) requires that an involuntary petition had been filed in bad faith before a bankruptcy court can award punitive damages, an award of attorney's fees and costs pursuant to § 303(i)(1) does not require a bad faith finding and it "is evident from the alternative provisions of § 303(i)(1) and (2) that Congress sensed there would be situations where the burdens imposed upon debtors, even in good-faith circumstances, should require the losing creditors to pay for the burden they had created." *In re Advance Press*, 46 B.R. at 702.

*Id.* at 217.

The district court also held that the refusals by the courts in Adell's bankruptcy case to award attorney fees to JRH did not preclude JRH from seeking fees here:

[T]he Court finds that the principles of res judicata and collateral estoppel do not apply in the current situation before the Court. Res judicata is inapplicable because the question whether § 303(i) permits the award of attorney fees following the dismissal and judgment of an involuntary petition is not an issue which was litigated or could have been litigated in the Florida bankruptcy proceeding. See *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577-78 (6th Cir. 2008). Collateral estoppel is inapplicable because the precise issue

10

> regarding the proper interpretation of § 303(i) was not raised and
> actually litigated in the Florida bankruptcy proceeding. *Kosinski v.
> Comm'r of Internal Revenue*, 541 F.3d 671, 675 (6th Cir. 2008).

*Id.* at 200 (footnote omitted).

The district court's remand instructions are:

> In conclusion, the Court finds that the bankruptcy court erred when
> ruling that it did not have the authority to consider post-judgment
> attorney fees and costs. The Court will thus reverse the decision of
> the bankruptcy court and remand it for a decision on the merits of
> HMSC's application and for a determination of the reasonable
> amount, if any, of attorney fees and costs. The Court notes that
> § 303(i) states that "the court *may* grant judgment . . . for . . . a
> reasonable attorney's fee," but that a bankruptcy court is not required
> to do so. 11 U.S.C. § 303(i) (emphasis added). The bankruptcy
> court, in its sound discretion, may determine whether attorney fees
> are warranted. Of course, the bankruptcy court should consider all
> circumstances in making an equitable determination whether attorney
> fees should be granted, including what transpired between the parties
> in the Florida court proceedings.

*Id.*

## B. The Fee Application and the Supplement Should Be Granted

In its discretion, the Court concludes that with certain reductions, an award of the fees that

Honigman requests is warranted and should be granted, for the following reasons:

### 1. Granting the Fee Application Is Necessary to Make JRH Whole

The first, and primary, reason to grant the application is that it is necessary to make JRH

whole. As both the district judge and the magistrate judge concluded, the purpose of the fee shifting

provision of § 303(i)(1) is to do just that. *Id.*, 405 B.R. at 199, 217. Similarly, in *In re John

Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591 (Bankr. E.D. Mich. 2003), this Court held, "11

U.S.C. § 303(i) was intended to accomplish several purposes. One was explicitly stated in the

legislative history of the section - to provide a remedy for the business damaged by a wrongful

11

filing[.]" *Id.* at 604.

This Court now finds that granting this fee application is necessary to remedy the damage that JRH suffered by Adell's wrongful filing of an involuntary bankruptcy petition against it. The Court further concludes that in the compelling circumstances of this case, imposing the burden of any of these fees on JRH would be unjust.

### 2. Adell Deserves No Equity

The second reason to award the requested fees in full is that Adell deserves no substantial equitable consideration from this Court. His wrongful and malicious conduct in filing the involuntary petition against JRH, and the resulting devastating consequences to JRH, have been well established in the record of this case and need not be repeated. Initially, his wrongful and malicious conduct justified an award of not only compensatory damages of $4.1 million but also punitive damages of $2 million, and that award was affirmed on appeal.

Of more importance now is that Adell then extended and multiplied his wrongful conduct and its consequences to JRH when he fled with his assets from Michigan to Florida with the specific intent to avoid this Court's judgment and to avoid compensating JRH for the damages he wrongfully caused. Soon after that he filed a chapter 11 case in which he unsuccessfully proposed several plans of reorganization. All but the last of those plans bizarrely offered to fund the payment of his debt to JRH from his frivolous legal malpractice suit against the attorneys who filed his involuntary bankruptcy case against JRH in the first instance. In any event, Adell's bankruptcy case was eventually converted to chapter 7 and then dismissed for bad faith and futility because his only substantial debt - to JRH - was nondischargeable. *In re Adell*, 332 B.R. 844, 849 (Bankr. M.D. Fla. 2005) (holding, "[O]n this record it is clear that the Debtor cannot be granted a discharge, by virtue

of § 727(a)(2)(A). As the Debtor is not entitled to a discharge, the fresh start policy is not applicable[.]"). But JRH achieved this result only after years of litigation in the bankruptcy court and appeals in the district court and in the Eleventh Circuit Court of Appeals, and only after JRH incurred a substantial debt for the legal services that were required to achieve that result and that the Honigman firm now seeks.

Adell's conduct does not justify any equity from this Court.

### 3. The Direct Connection Between Adell's Abuse and the Continuing Harm to JRH

The third reason for granting JRH's request for attorney fees is the direct connection between the harm that Adell inflicted on JRH by filing the involuntary bankruptcy petition against it in the first instance and the debt for fees that JRH incurred in defending the judgment on appeal, in attempting to collect the judgment, and in protecting the judgment from the potential consequences of Adell's own bankruptcy case.

In exercising the discretion that § 303(i) grants and that the district court instructed this Court to exercise on remand, the Court has certainly considered that the several courts that dealt with Adell's bankruptcy case denied JRH's requests for attorney fees. However, as the district court concluded on appeal here, the standards by which those courts denied those requests are different from the standard by which the present request is to be determined. 405 B.R. at 200. The issue here is whether and how to make JRH whole for the consequences of Adell's wrongful involuntary bankruptcy petition under § 303(i). The Florida courts that denied JRH's requests for fees were simply not faced or concerned with that issue.

As the magistrate judge astutely observed, "An award of attorney's fees and costs pursuant to § 303(i)(1) is not without limitation[.]" *Id.* at 217. In this case, however, the connection between

13

Adell's involuntary bankruptcy petition against JRH here in Michigan and his own subsequent voluntary bankruptcy case in Florida is direct and unmistakable. Adell fled to Florida immediately and then filed his bankruptcy case there for the specific and admitted purpose of shielding his assets from JRH's collection efforts after this Court granted a multimillion dollar judgment against him and after this Court then held that he could not utilize the Florida homestead exemption to protect his newly purchased $2.8 million home there from that judgment. *See In re John Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591 (Bankr. E.D. Mich. 2003). For that reason, JRH's extended legal battle to challenge Adell's bankruptcy was absolutely necessary for it to obtain any real relief from Adell's wrongful involuntary bankruptcy petition. Without it, the $6.4 million judgment that it obtained would have been just a piece of paper.

### 4. Deterrence

The final reason to award the requested fees in full is deterrence. In *In re John Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591, 606 (Bankr. E.D. Mich. 2003), this Court held, "In enacting § 303(i), Congress intended for JRH to be made whole after the injury that Adell caused, and to deter Adell and others from similar conduct."

In 2003, this Court entered a judgment for punitive damages against Adell in the amount of $2 million for the purpose of deterring him from conducting abusive litigation that injures JRH. *See In re John Richards Homes Bldg. Co., L.L.C.*, 291 B.R. 727 (Bankr. E.D. Mich. 2003), *aff'd* 312 B.R. 849 (E.D. Mich. 2004), *aff'd*, 439 F.3d 248 (6th Cir 2006). In fixing that amount of punitive damages, this Court stated, "In the Court's judgment, this is the minimum punitive damage amount that will address the dual purposes of adequate deterrence and punishment." *Id.* at 739. This Court thus concluded that such an award would deter Adell.

14

Unfortunately for JRH, this Court was erroneous in that conclusion, and clearly so. Although a $2 million punitive damage award should have been sufficient to deter Adell from his continued malicious abuse of JRH, it clearly did not. The Court is now presented with a second opportunity to accomplish the Congressional goal of deterring creditor abuse of alleged debtors through the involuntary bankruptcy process and must conclude that awarding these fees against Adell is necessary and appropriate to deter him.

## C. The Specifics of the Fee Application and the Supplement

The fee application seeks an award of fees and expenses for the following professionals for services provided from January 15, 2003 through February 28, 2006:

|  | Fees | Expenses | Total |
|---|---|---|---|
| Honigman, Miller Schwartz & Cohn | $929,620.75 | $180,156.38 | $1,109,777.13 |
| Berman & Norton Berman | $497,716.04 | $26,828.93 | $524,544.97 |
| Lynn J. Griffith, P.A. | $37,950.25 | $3,372.23 | $41,322.48 |
| Danning, Gill, Diamond & Kollitz | $4369.00 | $1,696.75 | $6,065.75 |
| Stout Risius Ross, Inc. | $525.00 | - | $525.00 |
| Oscher Consulting | $4,755.00 | - | $4,755.00 |
| Third Party Invoices | $25,983.71 | - | $25,983.71 |
| TOTAL | $1,500,919.75 | $212,054.29 | $1,712,974.04 |

The supplement seeks fees for services provided by the Honigman firm in the amount of $253,848.75, plus expenses of $35,934.87, for a total of $289,783.62. In the supplement, the Berman firm also seeks additional fees of $25,616.46 and expenses of $3,339.04, for a total of $28,955.50.

Accordingly, the total of all fees and expenses sought is $2,031,713.16.

15

A short description of JRH's professionals and the services they provided follows.

The Honigman firm has served as primary counsel for JRH throughout the proceedings in Michigan and in Florida.

The Berman firm was local counsel for JRH in the Florida proceedings.

Griffith was JRH's local counsel in Florida before Adell filed bankruptcy.

The Danning Gill firm represented JRH in its attempt to execute on Adell's property in California.

Stout Risius provided "extremely limited consultation services."

Oscher was JRH's expert witness on the infeasibility of Adell's Fourth Amended Plan of Reorganization.

**D. Adell's Objections to the Fee Application and Supplement**

Adell objects to the application on several grounds. He first argues that it is unprecedented to award fees under § 303(i) for legal services beyond the appeals from the judgment in the involuntary bankruptcy case. Initially, the Court notes that even if it is unprecedented to grant JRH's application, that does not necessarily make it inappropriate or violative of § 303(i). Equally importantly, what is also unprecedented is Adell's years-long pattern of malicious litigation against JRH. To the extent that Adell is simply arguing that the relief sought here should be granted only in the most compelling and egregious case, the Court agrees; however, for the reasons found in Part IV, the Court further finds that this is precisely that case.

Adell next argues that even if the court determines that JRH is entitled to an award of fees, the application should be denied or substantially reduced as to Honigman's request for fees and expenses because (1) assignments were overstaffed; (2) the descriptions of services were

16

insufficiently detailed; (3) there was duplication of services; (4) some services were provided by individuals with unnecessarily high hourly rates; (5) there were excessive hours spent on some services; (6) some services were ministerial tasks; (7) some fees and costs were inappropriately allocated; and (8) some requested costs are actually overhead expenses.

Upon careful review of the application, the Court found no substantial evidence that assignments were overstaffed; that there was unnecessary duplication of services; that hourly rates were too high for the services performed; that excessive hours were spent; or that any costs were actually overhead. Therefore, the Court overrules those objections.

However, the Court is persuaded that several of the time descriptions were insufficiently detailed (or redacted), and that some of the attorneys' services were ministerial.

> The key requirement for an award of attorney fees is that "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."

*Imwalle v. Reliance Medical Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983).

Although this is more than an isolated problem, it is not so serious that it warrants denying the fee application altogether. In the circumstances, the Court concludes that it is appropriate to simply reduce Honigman's request for fees by 15%, rather than to attempt the onerous task of identifying all of the specific problematic entries in the six and a half year span of the fee application and the supplement. This percentage is the Court's best estimate of an appropriate reduction. *See*

*e.g., Sykes v. Anderson*, 419 Fed. App'x 615, 618 (6th Cir. 2011) ("For Sykes's bill, the district court found it too difficult to address each item individually, opting instead to reduce the award across the board by twenty-five percent. . . . Neither solution that the district court imposed to remedy duplicative billing fell outside its discretion."); *Coulter v. Tenn.*, 805 F.2d 146, 152 (6th Cir. 1986).

The total of fees requested for the services provided by the Honigman firm is $1,183,469.50 ($929,620.75 in the second fee application plus $253,848.75 in the supplement). Therefore, the Court will reduce this request by $177,520.43.

At the hearing on this motion on remand, Adell's counsel emphasized two other arguments that deserve consideration. The first was that to award fees to JRH for Adell's appeal of the original judgment, the Court must find that the appeal itself was abusive; otherwise, it was argued, the right of a creditor to pursue an appeal of a judgment against it under § 303(i) will be chilled. This is indeed a substantial concern. Adell had a right under law to appeal this Court's damage judgment against him and that right is entitled to respect. At the same time, however, JRH also had a right to pursue its business without having to face Adell's abusive, bad faith involuntary bankruptcy petition. It also had a right under § 303(i) to be made whole for the losses, damages and attorney fees proximately caused by Adell's abusive filing. In the Court's discretion, due to the extreme circumstances of this case, the Court concludes that the equities require it to give more weight to JRH's position than to Adell's.

It is further argued that if only JRH had agreed to Adell's proposal to post a bond pending appeal in the district court in the first instance, the proceedings in Florida and the resulting attorney fees that JRH now seeks to have awarded could have been avoided. The difficulty with this argument is that the timing of the proposal to post a bond does not support the conclusion that the

litigation in Florida would have been unnecessary. Adell first sought to post a bond to obtain a stay of the judgment pending appeal over a year after he had filed bankruptcy and after the district court had affirmed the damage judgment. Moreover, Adell's offer to post a bond was not unconditional; it was conditioned on JRH's full release of its claims against Adell's employers for filing false garnishment disclosures, which JRH properly found objectionable. Accordingly, the argument is rejected.

### E. Conclusion Regarding the Fee Application and Supplement

The application for a second award for attorney fees and expenses and the supplement request a total award of $2,031,713.16. The Court disallowed $177,520.43. Accordingly, it is ordered that pursuant to 11 U.S.C. § 303(i), reasonable attorney fees and costs are granted against Adell in the reduced amount of $1,854,192.73.

### IV. JRH's Motion for Assessment of Additional Punitive Damages Based on Post-Award Conduct

JRH's "Motion for Assessment of Additional Punitive Damages Based on Post-Award Conduct" seeks an award of sanctions for Adell's continuing pattern of abuse of the judicial process in evading the § 303(i) judgment. This request is based on both the inherent power of the court and § 105 of the bankruptcy code. It must be noted that the motion does not seek an additional punitive damage award under § 303(i).

Specifically, the motion identifies the following conduct on Adell's part:

1. Adell's perjury in repeatedly testifying in objection to JRH's request for an order requiring the sale of his new home in Florida that he had become a resident of Florida, which was the basis of his claim that he was entitled to the Florida homestead exemption.

19

2.  Adell's active participation with STN.com and Adell Broadcasting Corp. in evading the post-judgment garnishment process by falsely stating in their disclosures that they owed Adell no money due to their setoff rights arising from loans that they had made to him.

3.  Adell's filing and prosecution of his unnecessary and abusive bankruptcy petition in Florida to obtain a stay of the judgment when he could afford to post a bond to obtain a stay.

JRH also asserts that as part of Adell's continuing pattern of abuse of the judicial process, Adell violated this Court's order prohibiting him from spending money outside of the ordinary course of his business.  The Court finds insufficient evidence of this and will not consider it further.

Finally, JRH also asserts Adell's prosecution of frivolous appeals from the § 303(i) judgment in the district court, the court of appeals and the Supreme Court.  The Court finds that those appeals were not frivolous and should not be considered part of his conduct in evading the judgment.

## A. The District Court's Reversal of the Denial of Additional Punitive Damages

On appeal, the district court concluded:

> Bankruptcy courts, like all courts, have an inherent power to issue sanctions, as explained by the United States Supreme Court in the *Chambers* case.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.") (quoting *Anderson v. Dunn*, 19 U.S. 204, 6 Wheat. 204, 227, 5 L. Ed. 242 (1821)).  The Sixth Circuit Court of Appeals has similarly stated that "[b]ankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct."  *Mapother & Mapother, P.S.C. v. Cooper* (*In re Downs*), 103 F.3d 472, 477 (6th Cir. 1996).  Contrary to the assumption of the bankruptcy court, the inherent power to issue sanctions is not limited to only those instances where a party violates a court order.  "The federal courts' inherent power to protect the orderly administration of justice and to maintain the authority and dignity of the court extends to a full range of litigation abuses."  *Mitan v. Int'l Fid. Ins. Co.*, 23 Fed. Appx. 292, 298 (6th Cir. 2001)

20

(ruling that a court can award sanctions "when bad faith occurs").

*John Richards Homes Bldg. Co., L.L.C. v. Adell* (*In re John Richards Homes Bldg. Co., L.L.C.*), 404 B.R. 220, 226-27 (E.D. Mich. 2009).

The district court added, "In addition to the inherent authority to issue sanctions as explained in *Chambers*, 11 U.S.C. § 105(a) grants to federal bankruptcy courts the authority to issue sanctions." *Id.* at 227.

The district court then summarized:

> Consequently, this Court finds that bankruptcy courts have both an inherent and a statutory power to issue sanctions. This power to grant sanctions is not limited to instances where a party abuses a court's order, but can be applied to all instances of "conduct which abuses the judicial process," including conduct which occurred in other courts. *Id.* Here, JRH has alleged that Adell acted egregiously by improperly shifting his Michigan assets to a Florida home and by unreasonably filing bankruptcy cases and pursuing appeals, all in an attempt to drain JRH's resources and to avoid satisfying the legally-binding judgment. This alleged abuse of the judicial process by Abell [sic] can properly be considered by the bankruptcy court.

*Id.*

Finally, the district court concluded that the bankruptcy court's authority is broad enough to sanction an improper appeal, though it properly counseled extreme caution in doing so:

> [N]either the *Chambers* case nor the language of 11 U.S.C. § 105 explicitly indicate any limitation, forbidding a court from issuing sanctions for an improper appeal. The Court does note, however, that a bankruptcy court should use great discretion when considering whether an appeal is an abuse of the judicial process, because parties have a right to appeal and because the bankruptcy court may not be in the best position to make an equitable determination whether the appeal is frivolous or deserving of sanctions.

*Id.*

The district court's remand instructions on this motion are:

21

The Court thus reverses the decision of the bankruptcy court and remands the case for a decision on the merits of JRH's motion for an assessment of additional punitive damages. Of course, the bankruptcy court should, in its discretion, consider all relevant circumstances including what transpired between the parties in the Florida court proceedings, in making an equitable determination whether punitive damages are warranted.

*Id.* at 228.

## B. The Motion for Additional Punitive Damages Should Be Granted

The Court finds that for the most part, the record supports the facts on which JRH's motion for additional punitive damages is based.

### 1. Adell's False Claim of Florida Residency

Adell testified repeatedly that after this Court's judgment, he took up permanent residence in Florida. For example, on May 15, 2003, he testified at a creditor's examination, "I never want to return to Michigan. I came back here. It was a catastrophic thing. I -- I -- I had to do something that was catastrophic to go to get away from this thing. I had to start my life over again." On that day he also testified, "I like Florida, and I want to stay there. And I'm still embarrassed even if the judgment got overturned."

On June 4, 2003, he testified in court, "The only time that I've ever come home is if I'm called or ordered by a judge to come home." He also gave this testimony:

Q  Mr. Adell, where are you domiciled?

A  In Florida

Q  Okay. And have you moved there with the intent to live there?

A  Yes, I did.

Q  How long do you intend to live there?

A  My, life, my whole life.

\* \* \*

Q  You're going to live in Florida for ever and ever, and ever, sir?

A.  That's correct.

This Court has already found that Adell's testimony that he was a resident of Florida was false.  This Court stated, "Adell's testimony regarding his homestead claim as to the Florida home lacks credibility and that he does not have the intent to reside in Florida permanently."  *In re John Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591, 609 (Bankr. E.D. Mich. 2003).

Of course, a finding that a party's testimony lacks credibility and is false is not by itself sufficient grounds to impose sanctions for abusing the judicial process under either the inherent power of the court or § 105(a).  To impose sanctions, it must clearly appear that the false testimony is material, knowingly and intentionally false, and designed to thwart the judicial process. *Chambers v. PASCO*, Inc., 501 U.S. 32, 45-46, 111 S. Ct. 2123, 2133 (1991) (holding that federal courts may rely on their inherent power to impose attorney's fees as a sanction "when a party has acted in bad-faith, vexatiously, wantonly, or for oppressive reasons.").  *See also Kadri v. Johnson*, 2005 WL 3454330 (W.D. Tenn. 2005).

In this case, the testimony was certainly material.  Adell's claim of residency in Florida was the factual basis of his claim to the Florida homestead exemption and therefore the basis of his opposition to JRH's request to sell the home in partial satisfaction of the judgment.

The Court also finds that Adell's testimony that he was a Florida resident was knowingly and intentionally false.  The circumstances leave no doubt about this.  His false testimony on this key point was not the result of any carelessness, confusion, forgetfulness, inarticulation, mistake,

23

ignorance, incompetence, lack of comprehension, or any other innocent circumstance. He knew that he had only taken a form of temporary sanctuary there and that he did not intend to make Florida his residence and was not a resident of Florida. He purchased the multi-million dollar home in Florida only to shelter his assets in Michigan from the judgment. Indeed, he testified that protecting his assets was his primary concern in purchasing the home. Almost immediately upon traveling to Florida, Adell did accomplish the ministerial acts of registering to vote and obtaining a fishing license, but these were little more than a sophomoric and disingenuous attempt to create the appearance of residency.

Other circumstantial evidence also strongly points to the conclusion that Adell's testimony regarding his Florida residency was knowingly and intentionally false:

a. Adell vacated his Franklin, Michigan home and purchased the Florida home within days after entry of the judgment. He offered no business or personal justification for the purchase of the home in Florida other than to protect his assets from the judgment.

b. As the Court previously found, "Adell did not move his personal property and effects to his home in Florida. Instead, he placed them in storage in Michigan." 298 B.R. at 608.

c. The Court also found that Adell left his Michigan office intact and available for his use. *Id.*

d. Despite his testimony that he would return to Michigan only if ordered, not long after the judgment and his subsequent bankruptcy he began making frequent trips to Michigan, several times per month. In addition, Adell and his wife rented a home in Michigan in 2004. Nominally, his wife's name was on the lease, but the evidence is clear enough that Adell and his employers paid the $7,500 per month rent. Then, a short time later, Adell purchased a home in Bloomfield Hills,

Michigan. Again, this was accomplished not in Adell's name, but through a trust. Adell claims that all of this resulted from changed circumstances - his wife's personal and business interests in returning to the area and his father's ill health. However, it is much more likely that the only changed circumstance that allowed Adell to believe that he could safely return to Michigan with his assets was the imposition of the automatic stay when he filed his bankruptcy in November of 2003.

Finally, for the same reasons, the Court finds that Adell's false testimony regarding his Florida residency was designed to thwart the judicial process by evading JRH's lawful attempts to collect on its judgment to repair the damage that Adell caused it.

### 2. Adell's Participation in the Evasion of the Garnishment Process by STN.com and Adell Broadcasting Corp.

This Court has already found, "Adell has actively participated with his employers in a scheme to evade JRH's garnishments of his income." 298 B.R. at 608. The Court explained:

> Adell is employed by Adell Broadcasting Corp. and The Word Network, both owned by his father. Adell's income in 1999 was $645,823. His income in 2000 was $935,660. His income in 2001 was $2,277,724. His income in 2002 was $1,705,683. However, when JRH attempted to garnish Adell's wages from Adell Broadcasting Corp., the garnishee disclosure returned by his father's companies indicated that the garnishments could not begin immediately because Adell's income was subject to set-off rights of the company. The testimony of Adell and his father revealed that the company had "loaned" Adell over $300,000 for the purchase of his home in Florida, for attorney fees, and for living expenses, and thus he is allegedly not currently receiving any income. The Court concludes that this arrangement is merely a further attempt by Adell to avoid paying the judgment.

*Id.*

The evidence further establishes that the "loans" on which Adell and his employers relied in filing their false garnishment disclosures were undocumented, without a due date, without stated

interest, and even without a clear agreement that they would ever need to be repaid. For all practical purposes, these "loans" were just another abusive means by which Adell could protect his assets - this time his substantial income - from JRH's attempts to collect on its judgment.

### 3. Adell's Unnecessary and Abusive Bankruptcy Filing

Between 2003 and 2009, Adell earned over $27 million from his employment. He did not need to file bankruptcy to protect his assets from a $6.1 million judgment. But even if he did, he certainly did not need to base his plan to repay JRH on anything as illusory as his frivolous malpractice action against his former attorneys.[1] And finally, after the dismissal of Adell's chapter 11 was ordered, the conversion of his case to chapter 7 could have been nothing but a further stall and evasion. His only debt was clearly nondischargeable and, more than that, he was not going to get a discharge at all because he had clearly transferred his assets with intent to hinder and delay JRH within one year before filing his petition, as Bankruptcy Judge Paskay found. *See In re Adell*, 332 B.R. 844, 849 (Bankr. M.D. Fla. 2005) (granting JRH's motion to dismiss Adell's chapter 7 case, finding, "on this record it is clear that the Debtor cannot be granted a discharge, by virtue of § 727(a)(2)(A).").

On this point, clarity is essential. This Court is not imposing sanctions against Adell for filing bankruptcy, or for filing bankruptcy in Florida, or for filing a frivolous bankruptcy, or for frivolously converting his case to chapter 7 after the dismissal of his chapter 11 case. The Court agrees with Adell that any such sanction would be highly improper for this Court. As authorized by the district court in its remand, however, this Court can sanction Adell for his pattern and plan

---

[1] *See Adell v. Schafer*, 2006 WL 475286 (Mich. App. Feb. 28, 2006) (affirming the trial court's summary disposition dismissing on collateral estoppel grounds Adell's legal malpractice claim against his counsel in the involuntary bankruptcy case).

of conduct that abused this Court's processes, abused JRH, and evaded this Court's punishment of him. *See John Richards Homes Bldg. Co., L.L.C. v. Adell* (*In re John Richards Homes Bldg. Co., L.L.C.*), 404 B.R. 220 (E.D. Mich. 2009). In its decision, the district court stated, "This power to grant sanctions is not limited to instances where a party abuses a court's order, but can be applied to all instances of 'conduct which abuses the judicial process,' *including conduct which occurred in other courts*." *Id.* at 227 (emphasis added) (quoting *In re Ludwick*, 185 B.R. 238, 245 (Bankr. W.D. Mich. 1995)). The district court also stated:

> In determining the appropriate equitable relief for JRH's request for punitive damages, a bankruptcy court should carefully consider all the circumstances surrounding the issue of punitive damages, including the actions of the Florida courts. The Court believes that the failure to consider whether punitive damages were recovered or denied elsewhere in proceedings related to the current case may amount to an abuse of discretion.

*Id.* at 228.

Adell accurately argues that none of the courts that addressed Adell's bankruptcy proceedings imposed sanctions against him. There is, however, a crucial distinction. Just as it would be improper for this Court to impose a sanction against Adell for his conduct in the proceedings of those courts, it would have been improper for those courts to sanction him for his abuse of this Court's processes. Accordingly, in denying JRH's requests for sanctions against Adell, those courts could not and did not consider whether Adell was abusing this Court's processes. Upon remand, that is this Court's responsibility.

### 4. Adell's Evasion of This Court's Punishment

There is yet another crucial distinction to make regarding the judgment that this Court entered against Adell. The judgment from which Adell fled was not merely a judgment to

compensate one party at the expense of the other in resolution of a private dispute between them. Rather, the judgment was, to the extent of the extraordinary sum of $2 million, this Court's punishment of Adell. His flight to Florida with his assets was his evasion of that punishment. He took his assets to Florida to escape this Court's punishment, and has so admitted. On August 17, 2010, at the hearing on remand, Adell testified, "I moved to Florida to protect my assets, and I took certain steps. And I just wanted to protect my assets while we waited on appeal." This conduct was therefore not merely an affront to JRH, but, more importantly, an affront to this Court. If it was necessary and proper to punish Adell for abusing this Court's process in the first instance, it is surely just as necessary and proper to punish him again for his attempt to evade the first punishment. Otherwise, there would be no point.

### 5. Adell's Continued Abuse Must Be Met with Enhanced Deterrence

The object of Adell's first punishment was deterrence. The Court concluded that it was necessary to impose on Adell an unprecedented $2 million punishment to deter him from abusing the judicial process to the prejudice of JRH or others. Plainly, that punishment failed. Adell was not deterred from continuing to abuse the Court's process to JRH's detriment. He immediately participated in a scheme to evade the Court's garnishment process. He fled Michigan and lied to this Court about his Florida residency to evade this Court's punishment and to evade JRH's collection efforts. Further, he filed bankruptcy not because he needed bankruptcy relief - he had the means to file a bond pending appeal - but in a further attempt to evade this Court's judgment and punishment. The Court is compelled to respond with deterrence to every abuse of its process that Adell commits. Indeed, to make that deterrence effective, the Court must respond with increasingly enhanced deterrence.

28

### C. Adell's Objections to the Motion for Additional Punitive Damages

Adell objects to the motion on several grounds, discussed below.

**1.** *The motion asserts no legal basis for the relief sought.*

In light of the district court's remand instructions, which quite carefully and fully identified the legal and equitable basis for considering JRH's request, this argument is rejected.

**2.** *The motion improperly requests sanctions for conduct outside of the litigation in this Court.*

**3.** *Adell should not be sanctioned for his unsuccessful bankruptcy case.*

Again, these arguments contradict the district court's mandate to this Court. See Part IV A, above. In support of this argument, Adell relies on *Children's Ctr. for Dev. Enrichment v. Machle*, 612 F.3d 518 (6th Cir. 2010), which was decided after the district court remand order. In that case, the plaintiff requested attorney fees for the administrative proceedings that preceded the court litigation. The Sixth Circuit affirmed the district court's denial of that request, holding:

> This inherent power to assess attorney's fees, however, arises from the court's authority "'to manage [its] *own* affairs so as to achieve the orderly and expeditious disposition of cases.'" [*Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, 111 S. Ct. 2123 (1991)] (emphasis added) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L.Ed.2d 734 (1962)). This rationale does not extend to cases in other courts. The inherent power of a court to manage its own affairs by assessing attorney's fees does not also empower it to assess fees in cases litigated in other venues. In fact, such a conclusion would infringe on the inherent power of other judges to manage their own affairs. Thus, the district court was right to conclude that even though it has inherent authority to award attorney's fees in exceptional cases before it, the "inherent authority of a court to award attorney fees applies only to those matters originally heard by that court."

*Id.* at 524.

The Court concludes that Adell's reliance on *Machle* is misplaced. *Machle* is fully

consistent with the district court's instructions to this Court on remand because those instructions do not authorize this Court to impose a sanction against Adell for his conduct in his bankruptcy case. For the reasons stated on Part IV B 3, above, it is, however, appropriate to consider Adell's bankruptcy in determining JRH's request for sanctions for abusing *this Court's own* processes.

**4. *Adell's move to Florida along with his transfer of assets there was legal and legitimate.***

**5. *Adell did legitimately become a Florida resident.***

Both of these arguments are addressed and rejected in Part IV B 1, above.

**6. *Adell should not be sanctioned for his appeals of this Court's judgment.***

The Court agrees. See Part IV, above.

**7. *Additional sanctions for the false garnishments filed by STN.com and Adell Broadcasting Corp. have already been denied and should not be relitigated.***

In *In re John Richards Homes Bldg. Co., LLC*, 346 B.R. 762 (Bankr. E.D. Mich. 2006), *aff'd John Richards Homes Bldg. Co., L.L.C. v. Adell Broadcasting Corp.* (*In re John Richards Homes Bldg. Co., L.L.C.*), 402 B.R. 780 (E.D. Mich. 2009), this Court denied JRH's motions for judgment against garnishee defendants STN.com and Adell Broadcasting Corp. for filing false garnishment disclosures. This result was required because Adell had paid JRH's judgment against him in full and because the garnishment statute permitted only a single satisfaction of the judgment. Nothing in those decisions either stated or implied that Adell was blameless for those false disclosures. Indeed, as stated in Part IV B 2, above, the Court has found to the contrary. This argument is rejected.

**8. *JRH bears equal or greater fault for the excessive litigation between the parties.***

Adell's continuing pattern of abuse of and disrespect for this Court's processes, his perjury, his flight from this Court's punishment, his legal scheming and maneuvering, his use of his wealth

to evade his legal obligations, and his unwillingness or inability to change his behavior are all much more reprehensible than the very occasional and minor excesses of JRH and its attorneys. This argument is also rejected.

**D. The Amount of the Sanctions**

In *Adell v. John Richards Homes Bldg. Co., L.L.C.* (*In re John Richards Homes Bldg. Co., L.L.C.*), 439 F.3d 248 (6th Cir. 2006), the Sixth Circuit affirmed this Court's award of $2 million in punitive damages against Adell for filing the improper involuntary bankruptcy petition. The court observed:

> In order to comply with due process, the Supreme Court has directed a court awarding punitive damages to consider three factors:
> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.
> *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S. Ct. 1513, 1520-21, 155 L.Ed.2d 585 (2003).

*Id.* at 265.

It appears to the Court that the same considerations should apply in determining an appropriate sanction against Adell now pursuant to the inherent power of the court and § 105(a). In addition, the Court should consider the purposes of such an award - to punish and deter the respondent and to deter others from similar conduct in the future. *In re John Richards Homes Bldg. Co., L.L.C.*, 291 B.R. 727, 736-37 (Bankr. E.D. Mich. 2003). "The general rule is that the amount of punitive damages must bear some reasonable relation to the injury inflicted and its cause." *Id.* at 737 (citation omitted).

On the issue of reprehensibility, the Supreme Court in *Campbell* stated:

> We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. . . . The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

*Campbell*, 538 U.S. at 419, 123 S. Ct. at 1521 (citations omitted).

The factors identified in *Campbell* that suggest an unprecedented degree of reprehensibility on Adell's part include JRH's financial vulnerability; Adell's unmitigated intent in abusing both this Court's processes and JRH; his intent to escape both the compensatory and punitive consequences of that abuse; and, most deplorable and important, his escalation of his abuse of this Court's processes and of JRH even after this Court's first punitive damage award.

On the issue of proportionality between the actual harm and the punitive award, the Supreme Court in *Campbell* stated, "In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Id.* at 426, 123 S. Ct. at 1524. In the present case, the Court has already determined that the actual harm to JRH from Adell's conduct was $1,854,192.73, which is the amount of attorney fees and expenses that is necessary to compensate JRH to make it whole.

On the issue of comparable penalties, this Court's original decision stated:

> Regarding the third factor, the Court observes that the most analogous federal crimes are false oath in a bankruptcy case under 18 U.S.C. § 152 and perjury under 18 U.S.C. § 1621. Conviction on these felonies can result in a fine of twice the victim's loss. 18 U.S.C. § 3571(d). *See United States v. Garrison*, 133 F.3d 831, 849 (11th Cir. 1998); *United States v. Tocco*, 135 F.3d 116, 132 (2d Cir. 1998); *United States v. Wilder*, 15 F.3d 1292, 1300–01 (5th Cir. 1994). In determining punitive damages in a civil matter, it is appropriate to consider the federal criminal fine statute, 18 U.S.C. § 3571. *Baker v. Hazelwood* (*In re Exxon Valdez*), 270 F.3d 1215, 1245 (9th Cir. 2001). Nevertheless this Court is mindful of the Supreme Court's caution in *Campbell* that this consideration has "less utility." *Campbell*, 123 S. Ct. at 1526.

*In re John Richards Homes Bldg. Co.*, 291 B.R. at 739.

For filing the involuntary bankruptcy petition in bad faith, the Court punished Adell in an amount that was approximately half of the compensatory damages. The Court now concludes that an enhanced sanction in an amount that is approximately 50% more than the compensatory damages of $1,854,192.73 is necessary and appropriate in this case. The Court therefore fixes the sanction against Adell in the amount of $2,800,000.00.

This sanction is substantially below the maximum that the Supreme Court in *Campbell* suggested for due process purposes. 538 U.S. at 425, 123 S. Ct. at 1524. It is also substantially below the maximum fine for the most analogous federal crimes. In the Court's judgment, this is an appropriate sanction that is necessary to accomplish the dual purposes of deterrence and punishment. Most importantly, it is both a fair reflection of the reprehensibility of Adell's conduct and a fair reflection of proportionality with JRH's actual damages.

It is so ordered.

For Publication

**Signed on October 27, 2011**

                                        /s/ Steven Rhodes
_____
                             **Steven Rhodes**
                             **United States Bankruptcy Judge**